*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

EARVIN JAMIL PARCHMAN,

   Defendant-Appellant.

UNPUBLISHED
July 20, 2023

No. 361571
Wayne Circuit Court
LC No. 17-001509-01-FC

Before: REDFORD, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his resentencing on two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables).[1] The trial court departed upward from the sentencing guidelines range and ordered defendant to serve concurrent prison terms of 25 to 50 years' imprisonment for each conviction, but did not explain why the departure sentences were more proportionate than sentences within guidelines. We remand again for the trial court to explain the grounds for the departures and the reasons for the extent of the departures, or for resentencing.

## A. RELEVANT FACTS AND PROCEDURAL HISTORY

The relevant facts were summarized in this Court's previous opinion in this case:

On January 19, 2017, the victim returned to her apartment and found that the door was unlocked, and defendant and another man were in her kitchen. The victim later testified that she had known defendant for approximately three or four years, and that she owed defendant $60 for drugs. Defendant demanded that she pay him, then ordered her to go into the bedroom where he repeatedly penetrated the victim

---

[1] Defendant was also convicted of, and sentenced for, one count of unarmed robbery, MCL 750.530, and one count of stealing or retaining a financial transaction device, MCL 750.157n(1), but does not challenge those sentences in this appeal.

vaginally and anally with a broom handle. After the attack, defendant took $20 and the victim's Bridge Card[1] from her wallet. He ordered the victim not to call the police.

After the two men left her apartment, the victim called the police and met with a police officer at a gas station. The victim gave the officer the broom that defendant used to assault her, having first placed a plastic bag over the top of the broom's handle. A medical examination revealed that the victim had injuries consistent with her description of the attack. Defendant later was identified in surveillance videos from locations where he used the victim's Bridge card.

Defendant was arrested and, after a jury trial, convicted of two counts of first-degree criminal sexual conduct, unarmed robbery, and stealing or retaining a financial device. Defendant was thereafter sentenced to consecutive terms of 25 to 50 years' imprisonment for the CSC-I convictions, and concurrent terms of 10 to 15 years' imprisonment for the unarmed robbery conviction and two to four years' imprisonment for the stealing or retaining a financial device conviction. Defendant now appeals from the judgment of sentence, challenging both his convictions and his sentence. [*People v Parchman*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2020 (Docket No. 341726), pp 1-2 (*Parchman I*).]

_____

[1] A Bridge card issued by the Michigan Department of Health and Human Services enables a qualified recipient to purchase certain food items and to access cash benefits.

_____

After his jury-trial convictions, the trial court originally sentenced defendant to 25 to 50 years' imprisonment for each of the aforementioned convictions, to be served consecutively. On appeal, this Court affirmed defendant's convictions but remanded to the trial court to fully articulate its rationale underlying the imposition and extent of each departure sentence, or for resentencing if the court determined on remand that the upward departure sentences were not warranted. *Parchman I*, unpub op at 5. At resentencing, the trial court determined that it would not impose consecutive sentencing, but resentenced defendant to 25 to 50 years' imprisonment for each CSC-1 conviction, to be served concurrently. Defendant's minimum sentences exceeded the minimum sentencing guidelines range of 171 to 285 months' (14¼ to 23¾ years') imprisonment. During the resentencing hearing, the trial court expressly acknowledged that it was departing from the advisory minimum sentencing guidelines range and provided the following rationale:

I'm going to sentence though on Count 1—and I'm going, I'm still going outside the guideline[s] because the testimony was horrible. It was horrific and it was it was [sic] heinous. There was a weapon that was, a broom—the testimony came out—used in this matter. That's repulsive. That's deviant in this [c]ourt's assessment.

The threats. The arrogance. The assaultive nature. Captivating [sic] someone, the [c]ourt found disturbing causing the [c]ourt to go beyond the guidelines. And the reliance was on the facts that came out during the trial . . . .

This appeal followed.

Defendant argues he is entitled to resentencing because the trial court imposed upward departure sentences for the CSC-I convictions which were disproportionate and unreasonable. Defendant advances that the trial court's reliance on factors that were allegedly not considered by the scoring of the sentencing guidelines, such as the seriousness of the offenses, did not establish why the departure sentences were appropriate. Defendant further argues that the court failed to sufficiently explain the reasons and extent for the departures from the minimum sentencing guidelines range, or why the departure sentences were more proportionate than sentences within the guidelines range for the CSC-I convictions. We agree.

## B. UPWARD DEPARTURE SENTENCES

We reviewed the relevant law in our opinion in *Parchman I* and we need not extensively repeat it here. While sentencing guidelines are now advisory, and no longer require substantial and compelling reasons for a departure after *Lockridge*, they remain a highly relevant consideration for purposes of exercising sentencing discretion, and trial courts must consult and account for the guidelines when imposing sentences. *Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In this case, defendant's recommended minimum sentencing guidelines range for the CSC-I convictions was 171 to 285 months' (14¼ to 23¾ years') imprisonment. The trial court sentenced defendant to serve 25 to 50 years' imprisonment for each CSC-I conviction, thus departing upward from defendant's recommended minimum sentence guidelines range by 15 months.

This Court explained in *Parchman I*, unpub op at 4-5, the need for greater detail in explaining the reasons for imposing a sentence that exceeds the sentencing guidelines recommendation. Admittedly, the trial court's explanation, as quoted earlier, for imposing a departure sentence was more extensive that its explanation at the original sentencing: "He had a broomstick. Everybody saw the broomstick. It was a heinous crime." But the trial court failed to comply with the following specific directive on remand:

> The trial court, however, did not explain the extent of the departure nor why a 15-month departure sentence is more proportionate than a sentence within the guidelines. A sentence cannot be upheld when the connection between the reasons, given by the trial court for the departure and the extent of the departure is unclear. *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). [*Parchman I*, unpub op at 5.]

Simply put, while the trial court at resentencing did provide slightly greater detail to justify a departure sentence, it did not provide an adequate explanation why the sentences imposed were more proportionate than that recommended by the sentencing guidelines.

For the reasons set forth in this opinion, we again remand this case for the trial court to further articulate its reasoning for its upward departure sentences, including a detailed explanation why the trial court believes that the sentences imposed are more proportionate than that recommended by the guidelines, or to resentence defendant. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney